IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMON BROWN,** | ) | |
| Petitioner, | ) | C.A. No. 06-53 Erie |
| | ) | |
| v. | ) | |
| | ) | **District Judge McLaughlin** |
| **JAMES SHERMAN,** | ) | **Magistrate Judge Baxter** |
| **WARDEN, FCI McKEAN,** | ) | |
| **et al.** Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that the claims that Petitioner has filed that challenge the execution of his federal sentence be denied on the merits and that the claims that Petitioner has filed that challenge the validity and execution of his State sentence be dismissed. It is further recommended that John Hallacy, Prosecuting Attorney for Calhoun County, Michigan, and the Michigan Department of Corrections be dismissed as Respondents.

**II.     REPORT**

Petitioner is a federal inmate serving a 90-month term of imprisonment on a conviction of "Possession with Intent to Distribute Five Grams or More of Cocaine Base," in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(III). At the time he filed the instant petition, he was incarcerated at FCI McKean. Petitioner is also serving a concurrent sentence imposed by the State of Michigan. He has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, in which he alleges that both his federal and Michigan sentences violate federal law and have encroached upon his constitutional rights. As relief, he seeks immediate release from both his federal and Michigan sentences.

**A.     Relevant Factual and Procedural History**

On or about June 9, 2001, local law enforcement officers arrested Petitioner in Michigan

1

and charged him with State criminal offenses.  (Document[1] 2 at ¶ 3a).  On June 11, 2001, State authorities released him on bond.  (Id. at ¶ 3b).  On June 18, 2001, while on bond, he was arrested by federal law enforcement officers and held in a federal prison facility in Newaygo County, Michigan.  (Id. at ¶ 3c).

On August 20, 2001, Petitioner pleaded guilty in the United States District Court for the Western District of Michigan to "Possession with Intent to Distribute Five Grams or More of Cocaine Base." (Id. at ¶¶ 3d, 3g).  On November 20, 2001, the district court sentenced him to a 90-month term of imprisonment followed by a four-year term of supervised release.  On that same date, the Federal Bureau of Prisons (the "BOP") commenced his sentence pursuant to 18 U.S.C. § 3585(a).  (Id. at ¶ 4; Document 1a at p. 3).  Soon thereafter, he was transferred to FCI McKean. (Id. at ¶ 3j; Document 1a).

By letter dated February 13, 2002, the Prosecuting Attorney for Calhoun County, Michigan, advised the BOP that Petitioner had open criminal charges in the State of Michigan and requested that a State detainer be lodged against him.  (Document 2d).  In response, the BOP issued a Detainer Action Letter to the Calhoun County Prosecutor's Office, advising that pursuant to their request, a detainer had been lodged at FCI McKean against Petitioner.  (Document 2e).  The BOP then advised Petitioner of the detainer and informed him that pursuant to the Interstate Agreement on Detainers Act (the "IADA"), 18 U.S.C. App. 2, § 2, he had the right to request that a final disposition of the State charges be made.  (Document 2d at p. 2).  Petitioner requested that he be returned to Calhoun County, Michigan, to face the open State criminal charges.  (Document 2f).

The United States and the State of Michigan are both signatories to the IADA, which establishes procedures for member states (the United States is defined as a "state" for the purposes of the IADA) to effect the expeditious and orderly disposition of out-of-state criminal charges pending against persons incarcerated in state institutions.  18 U.S.C. App. 2, § 2, Art. 1.  It provides for the delivery of temporary custody of a prisoner to the receiving state for trial prior to the completion of a prisoner's sentence in the sending state.  And, it seeks to minimize the consequent

---

[1] All "Document" citations are to those materials attached to the Response (Docket # 10).

interruption of the prisoner's ongoing prison term and prevent prosecutorial abuses of the detainer that potentially allow a prisoner to languish in a separate jurisdiction under the constant but uncertain threat of further prosecution. Id., Art. I.; See e.g., McCandless v. Vaugh, 172 F.3d 255 (3d Cir. 1999); Cooney v. Fulcomer, 886 F.2d 41 (3d Cir. 1989).

To further its purpose, the IADA provides that when a detainer is lodged and the prisoner has requested disposition of those charges, the sending state (here, the United States) shall deliver temporary custody of the prisoner to the receiving state (here, the State of Michigan). Id., Art. III-V. And if, as was the case here, the prisoner requests final disposition of those charges, then the receiving state (the State of Michigan) must bring him to trial within 180 days of his request for disposition of the charges or dismissal of those charges will result. Id., Art. III(a)-(d). (Should the prisoner fail to request final disposition of the charges, the IADA requires that trial in the receiving state must commence within 120 days. Id., Art. IV(c), V). The IADA further provides that if the prisoner is returned to the sending state before trial, the receiving state's charges against the prisoner must be dismissed. Id., Art. IV(e). Further, because the receipt of temporary custody by the receiving state is for the purpose of permitting prosecution on the untried charges that form the basis of the detainer, the prisoner is to be held in a suitable jail or other facility regularly used for persons awaiting prosecution. Id., Art. V(d). Finally, "[a]t the earliest practicable time consonant with the purposes of [the IADA], the prisoner shall be returned to the sending State." Id., V(e).

In this case, and pursuant to the IADA, on March 19, 2002, the BOP informed the Calhoun County Prosecuting Attorney that Petitioner requested disposition of the pending State charges. (Document 2g). The letter instructed:

> Inmates who are temporarily transferred pursuant to the IADA remain under the primary jurisdiction of federal authorities. Should you accept temporary custody of this inmate, we wish to remind you that under Article V(e) of the IADA you are required to return the above named inmate to this institution after prosecution on all pending charges. While this inmate is in your temporary custody, he shall be held in a suitable jail that meets the level of security required by the Bureau of Prisons. Any problems associated with this inmate must be reported to the individual listed below. This inmate may not be released on bail or bond while in your custody. *Additionally, this inmate is not to be committed to a state correctional institution for service of any state sentence(s) that may be imposed as a result of your prosecution.*

(Id. (emphasis added)).

3

The Calhoun County Prosecuting Attorney affirmed acceptance of temporary custody over Petitioner and returned to the BOP forms signifying an agreement to abide by the terms of the IADA transfer for processing of the open State criminal charges. (Document 2h; Document 2i). On or about April 16, 2002, Petitioner signed an acknowledgment form certifying that:

> I acknowledge that I am temporarily being transferred from federal to state custody for purposes of trial on state charges. I am aware that State officials are to return me to Federal custody at the conclusion of my state trial.
>
> *I am also aware that State officials should not release me into the community. If I am released by State authorities into the community, I am aware that my federal sentence will not run, and that I will not receive credit for my Federal sentence for any period of time I am in the community following release by the State Officials.*
>
> If State officials release me or transfer me to any facility, agency or person other than Federal, I agree to immediately call the following Bureau of Prisons Official (collect, person-to-person) at the designated Federal Institution in which I am presently incarcerated as indicated below.

(Document 2j (emphasis added)). The BOP then transferred Petitioner via the IADA for processing of the pending State criminal charges. (Document 2 at ¶ 3r; Document 1a at p. 1).

On April 18, 2002, Petitioner entered a plea of *nolo contendere* in Michigan State Court to "Flee/Eluding Third Degree" and "Possession with Intent to Distribute Less Than 50 Grams of a Controlled Substance." (Document 2k; Document 2 at ¶ 3s). On May 23, 2002, the State Court sentenced him to 23 to 60 months for the fleeing/eluding conviction and 24 to 360 months for the controlled substance conviction. (Id.) The State Court also directed that the fleeing/eluding sentence run concurrently with his federal sentence, and that the controlled substance sentence run consecutively to the federal sentence. (Id.; Document 2l).

According to Petitioner, on May 29, 2002, he was "transferred by the sheriff's department to the Michigan Department of Corrections (MDOC) to begin servicing his state sentence[.]" (Docket # 1 at p. 4). He claims that: "Upon his arrival at MDOC, [he] was issued an inmate identification number, a computation form depicting, inter alia, his offense date, his sentence date, the amount of jail time that has been credited to his state sentence, and his projected release date. Petitioner was therafter [sic] released into the general population where he began serving out his state sentence of 2 to 30 years." (Id.) He contends that on May 31, 2002, "MDOC officials instructed [him] to pack his personal property… [he was then] taken back to the county jail where he was initially held…

4

[and] remained at the county jail for approximately forty-five days" until he was transported back to FCI McKean. (Id. at p. 4-5).

By letter dated June 7, 2002, an official with the MDOC notified the BOP that on May 31, 2002, Petitioner was released to the Calhoun County Sheriff's Department to be transferred back to FCI McKean. (Document 2l). The official further advised the BOP of Petitioner's State sentence, and requested that the State sentence be lodged as a detainer against him. (Id.) On July 10, 2002, Petitioner was returned to FCI McKean. (Document 1a at p. 1; Document 2 at ¶ 3v).

As noted above, Petitioner's federal sentence was deemed to have commenced on November 20, 2001, the date it was imposed. (Document 2 at ¶ 4). The sentence has run continuously since the date it commenced. (Id.) He received 155 days prior custody credit pursuant to 18 U.S.C. § 3585(b) for all time served from June 18, 2001 through November 19, 2001. (Id.) Assuming that he receives all Good Conduct Time available to him under 18 U.S.C. § 3624(b), his projected release date is January 21, 2008. (Id.)

In May 2004, Petitioner filed a Request For Administrative Remedy at FCI McKean in which he contended that the IADA was violated because the State of Michigan commenced his sentence and that as a result his federal sentence should be terminated. (Document 1b). In response, the Warden explained to Petitioner that the BOP has no control as to how the State calculates his sentence and that the State's action did not impact the validity of his federal sentence. (Id. at p. 2). Petitioner's subsequent Regional Administrative Appeal and Central Office Administrative Remedy Appeal were denied for the same reasons. (Documents 1b at p. 3-4; Document 1c-1d).

Next, Petitioner filed the instant petition for writ of habeas corpus with this Court. He contends that because the State of Michigan allegedly designated him to a state correctional institution on May 29, 2002 for service of his state sentence, the federal government relinquished primary jurisdiction of him while he was in physical custody of the State pursuant to the IADA. As a result, he argues, his federal sentence terminated and his subsequent transfer back to federal custody improperly forced him to serve his federal sentence in installments. He also contends the BOP and the State of Michigan each violated the IADA. Finally, he contends that his State

5

sentence violates federal law and his constitutional rights. As relief, he seeks immediate release from both his federal and State of Michigan sentences.

### B.     Legal Analysis

**1.**

Petitioner first claims that the federal government relinquished primary jurisdiction over him to the State of Michigan and that as a result, his federal sentence terminated and was then restarted, in violation of the "continuous service rule."[2] (See Claim A and Claim E of the petition, Docket # 1). That rule provides that "unless interrupted by fault of the prisoner…a prison sentence runs continuously from the date on which the defendant surrenders to begin servicing it. The government is not permitted to delay the expiration of the sentence…by…releasing the prisoner for a time and then reimprisoning him." Dunne v. Keohane, 14 F.3d 335, 336 (7th Cir. 1994).

This claim has no merit. The Respondent has submitted irrefutable evidence to demonstrate that Petitioner's federal sentence has run continuously from the date on which he began serving it. His federal sentence commenced on the date it was imposed (November 20, 2001), *and has continued uninterrupted through the present date*. (See Document 2 at ¶ 4). Thus, his federal sentence has not proceeded in installments, and there has been no violation of the continuous service rule. Accordingly, this claim should be denied on the merits.

The genesis of this claim appears to be Petitioner's misunderstanding regarding the State sentence that he received. In the instant petition, he repeatedly misstates that his Michigan

---

[2] A federal prisoner seeking habeas relief under 28 U.S.C. § 2241 first must exhaust administrative remedies before bringing his claim to federal court. United States v. Wilson, 503 U.S. 329, 334-35 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996). The BOP is the agency charged with administering the federal prison system, Wilson, 503 U.S. at 334-35, and for all federal prisoners challenging BOP determinations, the initial venue is the administrative process. The BOP codified its Administrative Remedy Program in 28 C.F.R. Part 542, which provides detailed procedures and guidelines for federal prisoners to seek administrative review of any aspect of their confinement. Petitioner exhausted this claim with the BOP when he filed his administrative remedies.

Additionally, because this claim challenges the terms (*i.e.*, the execution) of his federal sentence, it was properly brought under 28 U.S.C. § 2241. See e.g., Bennett v. Soto, 850 F.2d 161 (3d Cir. 1988) (although a challenge to a federal sentence *as imposed* must be made under 28 U.S.C. § 2255, a claim concerning execution of a federal sentence by federal prison authorities is properly brought under 28 U.S.C. § 2241.)

sentence was to run *consecutively* to his federal sentence. That belief is factually incorrect, as the State Court directed that his sentence on his State fleeing/eluding conviction run *concurrently* with his federal sentence. (Documents 2k, 2l). However, because Petitioner erroneously believes that his State sentence was not supposed to commence until the conclusion of his federal sentence, that fact that his State sentence has in fact commenced has resulted in considerable confusion for him. For one, it has lead him to the additional erroneous assumption that when the State of Michigan commenced his concurrent State sentence (on May 23, 2002), that that effectuated a termination of his federal sentence. He apparently believes that he may only receive credit against the sentence imposed by the authority that has physical custody over him, or that his Michigan and federal sentence may not run simultaneously. Of course, Petitioner may serve, and has served, his federal sentence and State sentence concurrently, and he has never experienced an interruption in his federal sentence.

Additionally, Petitioner's misunderstanding regarding his concurrent State sentence may have resulted in him believing that, when he was fingerprinted and photographed at an MDOC facility on May 29, 2002 (after his State sentenced had commenced), that the State was improperly encroaching upon his federal sentence and terminated his federal sentence. This belief is understandable, as the BOP informed him prior to his transfer that the State of Michigan was not to "release" him "into the community[,]" and that if it did, his federal sentence would not run. (Document 2j).

Upon the record before this Court, it is unclear whether the State actually erroneously released Petitioner into "the community" for two days (from May 29 to May 31, 2002) or if it was doing nothing more than processing Petitioner's concurrent sentence in preparation for his return to federal authorities. It is noted, however, that the State agreed that it would not commit Petitioner to an institution for service of any sentence imposed in connection with its prosecution (Document 2h at p. 3), and there is no conclusive evidence on the record before this Court that the State violated that agreement. In any event, even if the State erred and, as Petitioner alleges, released him for approximately two days into its general prison population to begin serving his State sentence, *it cannot be disputed that the State's action did not impact his federal sentence, as that sentence has*

7

*run uninterrupted from November 20, 2001 to the present date.*³

It is further noted that the federal government clearly and unequivocally transferred only temporary custody of Petitioner to the State of Michigan pursuant to the IADA and it never ceded its primary jurisdiction over him. See e.g., United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005) ("Primary jurisdiction continues until the first sovereign relinquishes its priority in some way. Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: 1) release on bail, 2) dismissal of charges, 3) parole, or 4) expiration of sentence.")  Moreover, both the State of Michigan and Petitioner acknowledged that the transfer was for temporary custody only and that the federal government would retain primary jurisdiction over Petitioner.  (Documents 2d-2l).

**2.**

Next, Petitioner claims that the BOP violated the IADA's "anti-shuttling" provisions.⁴  (See Claim B).  Those anti-shuttling provisions were set forth above, and, to briefly summarize, provide: (1) that, under Article III, once a detainer is filed against a prisoner, he may demand that temporary custody of him be transferred to the receiving state and that a disposition of the charges be made within 180 days, 18 U.S.C. App. 2, § 2, Art. III(a); (2) should the prisoner fail to make an Article III request, the provisions of Article IV require that the sending state transfer temporary custody of him to the receiving state and that his trial there be commenced within 120 days, Id., Art. IV(c); and, (3) that the receiving state may not return the prisoner until the trial is completed, otherwise "the court shall enter an order dismissing the [indictment, information, or complaint] with prejudice."  Id., Art. IV(e).

---

³ As the district court wisely noted in Stroble v. Egeler, 408 F.Supp. 630 (E.D. MI 1976), a receiving state's technical violation of the IADA does not result in the sending state's relinquishment of primary jurisdiction over the prisoner.  "To adopt such a rigid view would violate the purpose of the [IADA].  The signatories to the [IADA] did not intend to let technical violations operate to release duly convicted prisoners from serving the balance of their sentences.… The [IADA] is intended to facilitate interstate movement of prisoners to clear up pending charges in other jurisdictions.  States would never utilize the [IADA] if they risked losing jurisdiction over a prisoner by so doing."  Stroble, 408 F.Supp. at 636.

⁴ Petitioner also exhausted this claim when he brought his administrative remedies with the BOP.  And, because this claim challenges the terms (*i.e.*, the execution) of his federal sentence, it was properly brought under 28 U.S.C. § 2241.  See supra note 2.

8

Petitioner argues here that because his concurrent State sentence commenced prior to his return to FCI McKean, Michigan became the "sending state" for IADA purposes, the United States became the "receiving state," and that after he was transferred back to FCI McKean in July 2002, federal authorities had to return him to Michigan authorities within 120 days. Because he was at FCI McKean "in excess of the 120 day time limit established by the IADA[,]" he claims the BOP violated the IADA and that as a result his federal sentence is void. (Docket # 1 at p. 10-11; Docket # 12 at p. 5-9).

As with Petitioner's first claim, this claim is premised upon Petitioner's incorrect understanding of the effect his temporary transfer to Michigan authorities had on his pending federal sentence, and it has no merit. The BOP did not violate the IADA. The United States was and always remained the "sending state" for IADA purposes, the State of Michigan was and always remained the "receiving state," and there is no basis whatsoever to support Petitioner's claim that the BOP violated the IADA's anti-shuttling provisions. Accordingly, this claim should be denied on the merits.

**3.**

Petitioner also raises a number of claims challenging his State judgment of sentence. (See Claims B-E) He contends that the State of Michigan violated the IADA by improperly designating him to a State correctional institution to begin serving his State sentence. He further claims that the State is improperly forcing him to serve his State sentence in installments. He contends that his State sentence violates his Fifth Amendment rights and that State authorities have committed additional violations in the manner in which it has imposed his sentence. Because of all of these alleged violations of federal and constitutional law, he contends that his state sentence is void.

These claims are not cognizable under a petition filed pursuant to 28 U.S.C. § 2241. Although a petitioner that is challenging the execution of his *federal* sentence must bring that challenge pursuant to 28 U.S.C. § 2241, a petitioner that is challenging (as Petitioner is in the claims at issue here) the *validity and execution of his state judgment of sentence*, must bring those claims under 28 U.S.C. § 2254. Coady v. Vaughn, 251 F.3d 480, 484-86 (3d Cir. 2001). As set

9

forth above, neither the fact nor the duration of Petitioner's federal sentence has been affected by the actions taken by Michigan authorities. Petitioner may disagree with his State sentence, the computation of his State sentence, and the State designation decisions, but those are State issues and they have not affected his federal sentence. Accordingly, Petitioner's claims attacking his Michigan judgment of sentence should be dismissed without prejudice to the filing of a petition under 28 U.S.C. § 2254, subject, of course, to the procedural requirements of that statute. Coady, 251 F.3d at 484-86.

### C.     The Michigan Respondents Should Be Dismissed

Finally, in addition to James Sherman, the Warden of FCI McKean, Petitioner named as Respondents the MDOC and John Hallacy, Prosecuting Attorney for Calhoun County, Michigan (collectively, "the Michigan Respondents"). The Michigan Respondents did not file a response to the instant petition, and Petitioner contends that he is entitled to judgment in his favor for that reason. (Docket # 12). The only proper respondent in this § 2241 petition, however, is the warden of the facility in which Petitioner is being held. See Rumsfield v. Padilla, 542 U.S. 426, 434-42 (2004). At the time Petitioner filed the instant petition, he was being held at FCI McKean and properly named its Warden, James Sherman, as Respondent. Because Petitioner's claims regarding his State judgment of sentence are not cognizable in the instant § 2241 petition and because the Michigan Respondents were improperly named as respondents in the first place, it is recommended that they be dismissed from these proceedings.

### D.     Certificate of Appealability

Section 102 of AEDPA (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

10

constitutional claims debatable or wrong[.]" Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000). A petitioner meets this standard if he can show that the issue "is debatable among jurists, or that a court could resolve the issue differently, or that the question deserves further proceedings." McCracken v. Gibson, 268 F.3d 970, 984 (10th Cir. 2001). Under 28 U.S.C. § 2253(c)(3), the district court must identify which specific issues satisfy the standard.

However, federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B). As such, this Court makes no certificate of appealability determination in this matter.

### III.    CONCLUSION

Wherefore, on the basis of the foregoing, it is respectfully recommended that Petitioner's claims attacking the execution of his federal sentence be denied and that Petitioner's claims attacking his State judgment of sentence be dismissed.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

/s/ SusanParadise Baxter
SUSAN PARADISE BAXTER
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: April 24, 2007