**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAMON BROWN,** **Petitioner,** | ) | **C.A. No. 06-53 Erie** |
| **v.** | ) | |
| **JAMES SHERMAN, WARDEN, FCI McKEAN, et al.** **Respondents.** | ) | **District Judge McLaughlin** **Magistrate Judge Baxter** |

**MEMORANDUM ORDER**

This habeas action filed pursuant to 28 U.S.C. § 2241 was referred to United States Magistrate Judge Susan Paradise Baxter for a report and recommendation in accordance with 28 U.S.C. § 636(b)(1), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrate Judges.

On April 25, 2007, Magistrate Judge Baxter issued the Report and Recommendation (Doc. No. 14) recommending that the claims that Petitioner has filed that challenge the execution of his federal sentence be denied on the merits. Magistrate Judge Baxter also recommended that the claims that Petitioner has filed that challenge the validity and execution of his sentence imposed by the State of Michigan be dismissed and that John Hallacy, Prosecuting Attorney for Calhoun County, Michigan, and the Michigan Department of Corrections also be dismissed as Respondents.

Petitioner has filed Objections to the Report and Recommendation. (Doc. No. 15). Where, as here, objections have been filed, the Court is required to make a *de novo* determination as to those portions of the Report and Recommendation to which objections were made. See 28 U.S.C.§ 636(b)(1). Accordingly, the Court has carefully examined *de novo* all claims raised by Petitioner in his objections and finds that they have no merit.

In his petition for writ of habeas corpus, Petitioner contends that he was forced to serve his federal sentence in installments, in violation of the "continuous service rule." (See Claim A and Claim E of the petition, Doc. No. 1). That rule provides that "unless interrupted by fault of

the prisoner…a prison sentence runs continuously from the date on which the defendant surrenders to begin servicing it. The government is not permitted to delay the expiration of the sentence…by…releasing the prisoner for a time and then reimprisoning him." Dunne v. Keohane, 14 F.3d 335, 336 (7th Cir. 1994). Magistrate Judge Baxter explained that this claim has no merit because Respondent has submitted irrefutable evidence to demonstrate that Petitioner's federal sentence commenced on the date it was imposed (November 20, 2001), *and has continued uninterrupted since the date of commencement.* Thus, Petitioner's federal sentence has not proceeded in installments, and there has been no violation of the continuous service rule.

Magistrate Judge Baxter further noted that Petitioner appeared to misunderstand the sentences the State of Michigan has imposed. It was explained that on May 23, 2002, the state court sentenced Petitioner to a term of imprisonment on a controlled substance conviction, and directed that that sentence run *consecutive* to the federal sentence. On that same date, the state court also sentenced Petitioner to a term of imprisonment on a fleeing/eluding conviction, and directed that that sentence run *concurrent* with his federal sentence. Magistrate Judge Baxter observed that although the state court had ordered that one of his sentences be served concurrent to his federal sentence, in his petition for writ of habeas corpus Petitioner repeatedly stated that, in general, his Michigan sentences were to run *consecutive* to his federal sentence. Because Petitioner apparently believed that none of his Michigan sentences were supposed to commence until the conclusion of his federal sentence, the fact that one of his state sentences has in fact commenced seems to have created considerable confusion for him.

In his Objections, Petitioner clarifies that in contending that the State of Michigan erroneously commenced his state sentence, he is referring to the judgment of sentence that he received at his controlled substance conviction. He claims that Michigan has improperly commenced that judgment of sentence, and that as a result, his federal sentence has terminated. This allegation, however, has no effect on the analysis set forth in the Report and

Recommendation. Even if the State of Michigan improperly commenced his judgment of sentence on his controlled substance conviction (and there is no convincing evidence offered that it did), its actions have no impact on his federal sentence. Once again, it cannot be disputed that Petitioner's federal sentence did no cease to run, even for a short period, as a result of any action by the State of Michigan.

Petitioner also directs this court to the United States Supreme Court's decision in Alabama v. Bozeman, 533 U.S. 146 (2001), and contends that that decision supports his assertion that the Federal Bureau of Prisons (the "BOP") lost all jurisdiction over him when he was in the temporary custody of the State of Michigan on the detainer governed by the terms of the Interstate Agreement on Detainers Act (the "IADA"), resulting in the termination of his federal sentence. Nothing in Bozeman, however, supports Petitioner's argument that the State of Michigan did unilaterally terminate his federal sentence, or could have unilaterally terminated his federal sentence.

Additionally, nothing in Bozeman supports Petitioner's contention that the BOP violated the IADA. In that case, there was no dispute that the "receiving state" had violated the anti-shuttling provisions[1] of the IADA by obtaining temporary custody of the prisoner from the "sending state," but then returning him without conducting his trial. 533 U.S. at 148-49. Article IV(e) of the IADA expressly prohibits return of a prisoner to the sending state before the receiving state has tried the prisoner. It provides: "If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint *shall not be of any further force or effect, and the court shall enter an order*

---

[1] Specifically, the IADA's "anti-shuttling" provisions provide that: (1) under Article III, once a detainer is filed against a prisoner, he may demand that temporary custody of him be transferred to the receiving state and that a disposition of the charges be made within 180 days, 18 U.S.C. App. 2, § 2, Art. III(a); (2) should the prisoner fail to make an Article III request, the provisions of Article IV require that the sending state transfer temporary custody of him to the receiving state and that his trial there be commenced within 120 days, Id., Art. IV(c); and, (3) the receiving state may not return the prisoner until the trial is completed, otherwise "the court shall enter an order dismissing the [indictment, information, or complaint] with prejudice." Id., Art. IV(e).

*dismissing the same with prejudice.*" (emphasis added). The only issue for the Supreme Court to decide in Bozeman was whether a one-day violation of Article IV(e) required dismissal of the receiving state's charges against the prisoner. The Supreme Court held that because the language of Article IV(e) is "absolute," even a *de minimis* violation required dismissal. Id. at 153-54.

To the extent that Article IV(e) is at issue at all in these proceedings, it is in regards to Petitioner's argument that because his concurrent state sentence allegedly improperly commenced prior to his return to BOP custody, Michigan became the "sending state" for IADA purposes, the United States became the "receiving state," and the BOP violated the anti-shuttling provisions of the IADA because it did not return him to the State of Michigan within a certain time period. (See Doc. No. at 10-11; Doc. No. 12 at p. 5-9). As explained in the Report and Recommendation, however, the United States was and always remained the "sending state" for IADA purposes, the State of Michigan was and always remained the "receiving state," and there is no basis whatsoever to support Petitioner's claim that the BOP violated the IADA's anti-shuttling provisions. Accordingly, the Supreme Court's decision in Bozeman does not support Petitioner's request for habeas relief.

AND NOW, this ____ day of May, 2007;

Following a *de novo* review of the pleadings and record in this case,

IT IS HEREBY ORDERED that the Report and Recommendation by Magistrate Judge Baxter be adopted as the opinion of this Court.

IT IS FURTHER ORDERED that the Clerk of Courts is directed to close this case.

Sean J. McLaughlin

Digitally signed by Sean J. McLaughlin
DN: cn=Sean J. McLaughlin, c=US, o=United States District Court, ou=United States District Judge
Date: 2007.05.22 15:52:44 -04'00'

SEAN J. MCLAUGHLIN
UNITED STATES DISTRICT JUDGE